## ELI STONE *v.* JONATHAN WAIT.

### *Trespass. Parol License.*

In trespass for depasturing land with cattle, it appeared that plaintiff and defendant had for many years owned and occupied adjoining pastures, which were only partially separated by fence. Defendant's evidence tended to show that from the time he went into possession of his pasture, he and plaintiff depastured the pastures in common, by mutual consent, and that the fence was suffered to fall into disrepair. Plaintiff's evidence tended to show that in 1867, defendant inclosed a large part of his pasture, and that in 1871, and every year thereafter until suit brought, plaintiff forbade defendant from putting or permitting cattle in his pasture. Defendant's evidence tended to show that after the time when plaintiff claimed to have so forbidden defendant, plaintiff's cattle sometimes depastured the uninclosed part of defendant's pasture. Defendant requested the court to charge that plaintiff could not annul the arrangement by notice, if he continued to depasture as before, or that if he continued to depasture, the jury might find a continuance of consent. The court charged that either party might end the arrangement at will; and that if plaintiff gave the alleged notice, he was entitled to recover. *Held,* that there was no tenancy, but a license, which plaintiff could revoke at pleasure; that plaintiff was not estopped by having permitted the fence to fall into disrepair or otherwise; and that the charge was without error.

TRESPASS *qua. clau.* for depasturing land with cattle, &c. Plea, general issue, with notice of special matter. Trial by jury, June Term, 1877, DUNTON, J., presiding.

It appeared that the parties were owners of adjoining farms and pasture lands, which they had owned and occupied for many years, the defendant having purchased his farm and gone into occupancy thereof in 1864. The plaintiff introduced evidence tending to show that each year after the defendant purchased his farm, he turned his cattle into his pasture, whence they continually strayed into the plaintiff's pasture, and there grazed and depastured; that in 1864, defendant inclosed the principal part of his pasture, after which, from year to year, and many times in each year, to the time of the bringing of this suit, he drove his cattle, varying in number from eight to thirteen, through a gate in the fence between said pastures, into plaintiff's pasture, and so suffered them to depasture there, more or less, from May to November of each year; that in 1871, and in every year thereafter

to the time of the bringing of this suit, plaintiff on several occasions forbade defendant from so turning his cattle on to plaintiff's land, and requested him to restrain them, and on one or more occasions threatened to prosecute defendant, but that defendant was defiant, and told him to sue, as he wanted a good law-suit with him, etc. ; and that on one occasion when plaintiff was driving the cattle out of his pasture, defendant sent his servant to drive them back, which he did so that plaintiff, who was a very old man, was unable to drive them out.

The defendant's testimony tended to show that from the time defendant purchased his farm to the time of the bringing of this suit, the parties had occupied the pastures in common, by mutual consent and agreement, the cattle of each running upon and depasturing the land of the other as they were inclined, and that the plaintiff pastured each year as many cattle as, or more than, the defendant did ; but this the plaintiff's testimony tended to contradict. The defendant's evidence also tended to show that in 1867, defendant applied to the plaintiff to divide and build a division fence between said pastures, but that the plaintiff declined so to do, but preferred to let his lands lie common as they had. The defendant denied that plaintiff ever requested him to restrain his cattle, or not to turn them through the gate ; and testified that although he fenced off a part of his pasture in 1867, he left a large part of it uninclosed as before. The defendant's testimony further tended to show, that at the time he bought his farm, there was a fence a part of the way along the line between the two pastures, which was greatly out of repair, but which the parties repaired in 1865 and 1866, so as to keep their sheep separate, but not so as to prevent the cattle of each from going onto the land of the other, and which they afterwards suffered to run down.

·The plaintiff's evidence tended to show that after the defendant fenced off his pasture in 1867, there was but little of defendant's pasture land adjacent to plaintiff's on which feed grew, and that plaintiff's cattle seldom if ever strayed on to defendant's uninclosed pasture. Defendant denied that plaintiff forbade his turning his cattle into plaintiff's pasture, or requested him to restrain them ; and there was no evidence tending to show that the plain-

tiff did anything showing or tending to show that he was willing or expected that any agreement to pasture in common should continue after he forbade defendant from turning his cattle into or allowing them to run in his pasture, other than evidence that plaintiff's cattle sometimes went on to the defendant's uninclosed pasture land and there depastured.

The defendant requested the court to charge, in substance, that if there was a mutual license or a contract to pasture in common, and the parties pastured in common in pursuance thereof, and in consequence thereof let their fences decay, the plaintiff could not annul and repudiate the same by notifying the defendant not longer to depasture his lands, if he himself continued to act thereunder by pasturing his stock as he had before ; or, if that request was wrong, then to charge that if the parties agreed to pasture in common, but, at some time prior to the bringing of the suit, plaintiff told defendant that he must not longer pasture cattle on his lands, still, if the parties continued to depasture as before, and allowed the fence to run down, the jury might find that plaintiff did not insist on the nullification of the agreement, but consented to its continuance ; and that if there was an agreement, the plaintiff, to annul it, should have given defendant " such notice as would fairly be understood that he did no longer consent to the arrangement, but repudiated it."

The court charged that if there was such an agreement or understanding, either party had a right to put an end to it whenever he pleased, and that if in 1871 the plaintiff gave the defendant notice that he must thereafter restrain his cattle and keep them on his own land, or forbade him to allow his cattle to run on, or to turn them on to, plaintiff's land, then plaintiff was entitled to recover. To the refusal to charge as requested, and to the charge as given, defendant excepted.

The jury found specially, that there was an agreement or understanding to pasture in common, but that it was terminated by plaintiff in 1871, in the manner his evidence tended to show. The court certified that the cause of action arose from the willful and malicious act of the defendant, and awarded a close-jail certificate.

84

*W. B. Sheldon,* for the defendant.

The plaintiff could not rescind by simple notice to quit, while continuing to avail himself of the contract. 2 Parsons Cont. 531, n., 679 a ; Herman Estoppel, 437 ; 2 Kent Com. 480 ; *Sherman* v. *Champlain Transportation Co.* 31 Vt. 162.

The question should have been submitted whether the plaintiff waived his notice by continuing to use the land in common. 4 Kent Com. 116 ; 1 General Ev. 27, 48, 207, 208 ; 1 Washb. Real Prop. 382, 385, 390 ; *Admr. of Wheelock* v. *Clark & Putnam,* 11 Vt. 583 ; *Austin* v. *Wheeler,* 16 Vt. 95 ; *Baker* v. *T. & R. R. Co.* 27 Vt. 766, 776.

The notice must not only have been such as fairly to have been understood, but must have been understood, to be effective. 1 Washb. Real Prop. 387.

The occupation of the defendant was in legal intendment a tenancy from year to year. 4 Kent Com. 111–116 ; 1 Washb. Real Prop. 386–388 ; *Hanchett* v. *Whitney,* 2 Aik. 240 ; *Barlow* v. *Wainwright,* 22 Vt. 88 ; *Hall* v. *Wadsworth,* 28 Vt. 410.

*T. Sibley* and *Gardner & Harmon,* for the plaintiff.

The arrangement between the parties was a mere mutual license, and revocable at the will of each. 2 Am. Lead. Cas. 728, 733, and n., 376, *et seq.* It would make no difference if the license had its origin in contract or was founded otherwise on consideration, unless the forms requisite to bind the land were preserved. *Martson* v. *Gale,* 4 Fost. 176 : *Wood* v. *Leadbitter,* 13 M. & W. 833.

But if the defendant acquired an interest in the land, it must have been terminated by its own limitation and by the repeated revocations of the plaintiff.

The charge was correct on other points.

The opinion of the court was delivered by

BARRETT, J. In this case there is no feature of a tenancy as between the parties — the relation of rent-paying to the one for occupation by the other. It was the case of a license by the plaintiff that the defendant's cattle might feed on his land, and a like license by the defendant that the plaintiff's cattle might feed

on his land. It was a volunteer arrangement between them, not involving the creation and vesting of an affirmative right *ex contractu*, enforcible by suit, to pasture the cattle of the one on the land of the other ; but it only operated to make the acts of each, as to the pasture of the other, lawful, and not trespasses, so long as the arrangement by mutual consent should continue. When that consent was withdrawn by either of the parties, and the license revoked, the right of the other party under such license was thereby ended, and he would become a trespasser by putting or permitting his cattle upon the land of the revoking party after such revocation, the same as if no such arrangement and license had previously existed.

The evidence did not tend to show any other relation of the parties than such as above indicated. Nor did it tend to show any element of *estoppel in pais*. Each party knew exactly the arrangement and understanding upon which the cattle were being pastured indiscriminately, and without division fence, in the pastures of the two parties ; and that was, in fact, a parol license from each to the other, which, in law, was revocable at pleasure by either. The course as to fencing, and letting fences run down, went on with this posture of the parties to each other in full view, and neither was able to be thereby misled through any act or neglect of the other.

The evidence, direct and circumstantial, bore on the subject of the arrangement and understanding between the parties, as constituting license from each to the other, and of the revocation of such license by the plaintiff.

Under the charge by the court, the full force of the defendant's evidence was accorded to him, and there was no error in law in not otherwise complying with his requests. The judgment for nominal damages is affirmed, including the judgment awarding a close-jail certificate ; and full costs are allowed to the plaintiff.